UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| MIDLAND FARMS, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE, RISK MANAGEMENT AGENCY, AND FEDERAL CROP INSURANCE CORPORATION,<br><br>Defendants. | 3:13-CV-03029-RAL<br><br><br>OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

Plaintiff Midland Farms, LLC, (Midland Farms) brought this action under the Administrative Procedure Act (APA), 5 U.S.C. §§ 551–59, to challenge a final agency determination involving interpretation of the Defendants' common crop insurance policy. The Defendants—United States Department of Agriculture (USDA), Risk Management Agency[1] (RMA), and Federal Crop Insurance Corporation (FCIC) (collectively Defendants)—acknowledge shortcomings in the final agency decision, but defend the core of the decision. Because a material part of the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under 5 U.S.C. § 706(b), this Court grants in part Plaintiff's Motion for Summary Judgment and remands the matter for further proceedings not inconsistent with this Opinion and Order.

---

[1]The administrative record under review was compiled by the RMA, and thus citations to the Agency's record will be denoted by "RMA" followed by the record page number.

1

## I.    STANDARD OF REVIEW

### A.  Summary Judgment Standard

Midland Farms submits this case on a Motion for Summary Judgment.  Under the Federal

Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a).  Summary judgment is not "a disfavored procedural shortcut, but

rather . . . an integral part of the Federal Rules as a whole, which are designed 'to secure the just,

speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317,

327 (1986) (quoting Fed. R. Civ. P. 1).  On summary judgment, courts view "the evidence and

the inferences that may be reasonably drawn from the evidence in the light most favorable to the

nonmoving party." Equal Emp't Opportunity Comm'n v. CRST Van Expedited, Inc., 679 F.3d

657, 686 (8th Cir. 2012) (quoting Mayer v. Countrywide Home Loans, 647 F.3d 789, 791 (8th

Cir. 2011)).  A party opposing a properly made and supported motion for summary judgment

must cite to particular materials in the record supporting the assertion that a fact is genuinely

disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145

(8th Cir. 2012).

Consistent with Local Rules, Midland Farms filed Plaintiff's Statement of Undisputed

Material Facts.  Doc. 41; see D.S.D. Civ. L.R. 56.1.  The Defendants responded, asserting that

one of the paragraphs was argumentative and that the Statement of Undisputed Material Facts

was largely extraneous to the issue before the Court.    Doc. 46.    Defendants however

acknowledged that, in this administrative record review case, there are no disputed facts for this

Court to resolve and that resolution of the case on summary judgment is appropriate.  Doc. 45 at

7.  Indeed, in a prior case involving interpretation of the Defendants' common crop insurance

2

policy, the United States Court of Appeals for the Eighth Circuit concluded that the proper construction of such an insurance contract "is an issue of law, and thus well suited for summary judgment." Kroeplin Farms Gen. P'ship v. Heartland Crop Ins., Inc., 430 F.3d 906, 909 (8th Cir. 2005).

### B. APA Standard of Review

This case ultimately is a review of an agency action under the APA. This Court must make a "searching and careful" review, but may only set aside decisions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Thomas v. Jackson, 581 F.3d 658, 664 (8th Cir. 2009) (internal quotation omitted); South Dakota v. U.S. Dep't of Interior, 775 F. Supp. 2d 1129, 1141 (D.S.D. 2011); see 5 U.S.C. § 706(b). Agency action is arbitrary and capricious if:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

In re: Operation of Mo. River Sys. Litig., 421 F.3d 618, 628 (8th Cir. 2005) (quoting Cent. S.D. Coop. Grazing Dist. v. Sec'y of the U.S. Dep't of Agric., 266 F.3d 889, 894 (8th Cir. 2001)). Courts give substantial deference to an administrative agency's interpretation of its own regulations when such regulations are ambiguous. Auer v. Robbins, 519 U.S. 452, 461 (1997); Chalenor v. Univ. of N.D., 291 F.3d 1042, 1046 (8th Cir. 2002). This Court should defer to any reasonable agency construction of its ambiguous regulation, even those which might "not be the best or most natural one by grammatical or other standards." Pauley v. BethEnergy Mines, Inc., 501 U.S. 680, 702 (1991); Chalenor, 291 F.3d at 1046.

3

Yet federal administrative agencies nevertheless remain "required to engage in 'reasoned decision making.'"  Michigan v. EPA, 576 U.S. ___, ___, No. 14−46, slip op. at 5 (June 29, 2015) (quoting Allentown Mack Sales & Serv., Inc. v. NLRB, 522 U.S. 359, 374 (1998)).  The process by which an agency reaches a result must be "logical and rational."  Allentown Mack, 522 U.S. at 374.  And an agency action must rest "on a consideration of the relevant factors."  Michigan, 576 U.S. at ___, slip op. at 5 (quoting Motor Vehicle Mfrs. Assn. of the U.S., Inc. v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983)).

## II.    FACTS NOT SUBJECT TO GENUINE DISPUTE

The Defendants take a narrow view of what the Court should consider as the facts in this case, not because they dispute Plaintiff's Statement of Undisputed Material Facts, but because neither the Defendants nor this Court are to act as fact finders in a case of this nature.  The Defendants are right that the fact finder typically is an arbitrator, but the Defendants' position in the final agency decision would prevent any arbitrator or other finder of fact from considering the facts of this case or any similar case.  The underlying facts[2] provide context for how the issues in this case arose and illustrate how, in practice, some aspects of the Defendants' final agency decision are arbitrary and capricious, an abuse of discretion or not in accord with law.

Midland Farms at the relevant time owned approximately 35,055 acres of farmland in Haakon and Stanley Counties in South Dakota.  In 2008 and into early 2009, Hardes Farms, LLC, farmed some of this land as a tenant of Midland Farms.  Members of Hardes Farms, LLC—Wade Hardes, Mike Hardes, Seresa Hardes, and Mark Hardes—obtained policies of federally-reinsured crop insurance to insure crops planted on the land leased from Midland

---

[2]The underlying facts appear to be undisputed between Midland Farms and these Defendants. This Court makes no findings of fact here at all.  It may ultimately be for an arbitrator to consider whether these facts indeed are uncontroverted between Midland Farms and its insurer, NAU Country Insurance Company.

Farms. The policies of crop insurance at issue were issued by NAU Country Insurance Company (NAU) and insured winter wheat crops planted late 2008 to be harvested in 2009.

NAU is an Approved Insurance Provider (AIP) of federally-reinsured crop insurance. The Federal Crop Insurance Act (FCIA) established the current system of crop insurance. The FCIA designated FCIC, an agency of and within USDA, to "carry out the purposes" of the FCIA. 7 U.S.C. § 1503. The 1996 Farm Bill established the RMA, which serves as the administrator and manager of FCIC. Federal Agriculture Improvement and Reform Act of 1996, Pub. L. No. 104-127, § 194, 110 Stat. 888, 945–46 (codified at 7 U.S.C. § 6933). RMA is an agency of the USDA and is charged with regulation and oversight of the FCIA. 7 U.S.C. §§ 1501−24. RMA has issued a "standard reinsurance agreement," which establishes the terms and conditions under which the FCIC will provide subsidies and reinsurance on eligible crop insurance contracts sold by AIPs like NAU. See 7 C.F.R. §§ 400.163–64.

> In order to qualify for reinsurance through the FCIC, the policies written by approved private insurers must comply with the FCIA and its accompanying regulations. Consequently, the FCIA generally establishes the terms and conditions of insurance, even though the crop insurance policy is between the farmer and the approved insurance provider.

Davis v. Producers Agric. Ins. Co., 762 F.3d 1276, 1284 (11th Cir. 2014) (internal quotation marks and alterations omitted).

The federal crop insurance policy provisions are set forth in Part 457 of Title 7 of the Code of Federal Regulations and are the policy terms that AIPs like NAU must offer its insured farmers. The insurance policy provisions specifically at issue in this case, and the policy issued by NAU to the Hardeses, are in 7 C.F.R. § 457.8 and are entitled the "common crop insurance policy" and commonly are called "basic provisions."

5

Members of the Hardes family obtained common crop insurance policies from NAU for their winter wheat crop planted on Midland Farms' land in the Fall of 2008 to be harvested in 2009. RMA 87. By January of 2009, however, Hardes Farms, LLC, was in breach of its lease agreement with Midland Farms. RMA 87. Midland Farms started an eviction proceeding in January of 2009 in Haakon County, Sixth Judicial Circuit, South Dakota. RMA 87. The Hardeses, on February 5, 2009, on their own and apart from the state court action, executed an assignment of indemnity form concerning crop insurance proceeds in favor of First National Bank, Farmer and Merchants Branch.[3] RMA 87. On February 23, 2009, Judge John L. Brown entered a default judgment in favor of Midland Farms and against the Hardeses, which, among other things, ordered the Hardeses to vacate Midland Farms' land, ordered that "any and all crops growing on the premises described in the Complaint . . . are hereby the property of [Midland Farms]," and ordered "that any and all crop insurance policies regarding crops currently growing on the premises . . . are hereby transferred and assigned to [Midland Farms]." RMA 201–03. Shortly after the default judgment, the Hardeses decided to execute an assignment of indemnity concerning crop insurance proceeds in favor of Doug Kroeplin Ag Services, an agronomist.[4] RMA 87. Judge Brown later entered an amended default judgment in March of 2009 with similar language and made that order *nunc pro tunc*[5] to February 23, 2009. RMA 269–72.

---

[3]This is an assignment in favor of a secured creditor under Section 29 of the common crop insurance policy and is not to be confused with a transfer of the policy under Section 28. See RMA 38.

[4]This is a second assignment to a creditor under Section 29 and again is not to be confused with a transfer of the policy under Section 28. See RMA 38.

[5]"*Nunc pro tunc*" is the Latin phrase meaning "now for then." Black's Law Dictionary 1174 (9th ed. 2009). A *nunc pro tunc* entry is "made of something previously done, to have effect as of the former date." 21 C.J.S. Courts § 250 (2015).

Midland Farms' managing partner contacted NAU's agent regarding transfer of the crop

insurance policies, who in turn referred the question to RMA. RMA, on March 15, 2009,

advised Midland Farms:

> According to our attorney – because the default judgment gave you
> ownership of the crop does not mean that insurance automatically transfers to
> Midland. The regular Federal Crop Insurance Corporation procedures must be
> followed regarding when there is a transfer of ownership of acreage. This means
> that the process in Section 28 of the Basic Provisions (7 CFR 457.8) and any
> procedures in the Crop Insurance Handbook . . . must be followed.

RMA 49. With regard to the crop insurance policies on winter wheat, RMA further advised

Midland Farms:

> The simplest way to effect the change would be for the ex-tenant (Hardes)
> to transfer his insurance coverage to Midland. This can be done by both Hardes
> and Midland signing a Transfer of Coverage and Right to Indemnity form, for
> each policy.
> Because the court document gave you ownership of the crop, you are
> responsible for the 2009 premium payment. It is encouraged that you verify that
> the premium has been paid. Non-payment of the premium could make you
> delinquent and owe a debt to the company (NAU). An outstanding debt to the
> company would make you ineligible for crop insurance until that outstanding debt
> is paid.
> I am attaching a copy of the NAU form used to transfer the insurance
> coverage.

RMA 55.

> NAU's general counsel reported to the attorney for Midland Farms in July of 2009:

> As long as the signed Transfer of Rights to Indemnity is received in our
> office before the claim paperwork is received in our office, we will accept the
> Transfer of Rights.
> There is no actual deadline date or anything outlining what is the final date
> we can accept a Transfer of Rights to Indemnity.

RMA 82–83.

The Hardeses, despite the state court order, stalled and initially refused to execute the

transfer of coverage and right to indemnity forms in Midland's favor. Ultimately, the Hardeses

7

did so on July 27, 2009, with all of the forms dated "*nunc pro tunc*"[6] to the February 23, 2009 eviction judgment.  RMA 57–81.  Rabo Ag Insurance on behalf of Midland Farms submitted the signed transfer of coverage forms to NAU on August 21, 2009.  See RMA 56, 82.

On September 24, 2009, NAU acknowledged receipt of the transfer forms, but denied each transfer.  RMA 82–83.  NAU stated the reason for the denial being that Hardes Farms, LLC, lost its insurable interest in the crops when evicted on February 23, 2009, so the Hardeses had no interest in the crops to transfer on July 27, 2009.  NAU further refused to accept the *nunc pro tunc* date of the transfers to be February 23, 2009.  RMA 82–83.

Both NAU and Midland Farms made requests for interpretation to the Defendants.  RMA and FCIC initially responded with a July 19, 2011 letter, RMA 102–05, there was an appeal, RMA 301, 436–41, confusion over whether the letter was a final agency determination, RMA 146, and ultimately abandonment of the appeal, RMA 315–16.  The agency letter of July 19, 2011 is not at issue here.

Meanwhile, Midland Farms started an arbitration action against NAU under Section 20 of the common crop insurance policy provisions.  Section 20 provides for mandatory arbitration of

---

[6]There is no dispute that the Hardeses signed the Transfer of Coverage and Right to Indemnity forms in July with a purported effective date of February 23, 2009.  Doc. 41 at 5; Doc. 46.  Curiously, the Transfer of Coverage and Right to Indemnity forms in the administrative record contain no dates in the signature blocks, have no "*nunc pro tunc*" language, and state "8/4" as the effective date of the transfer.  RMA 57–81.  This Court will assume that the forms with the purported "*nunc pro tunc*" language exist and were sent to NAU, though there is some disagreement among courts whether a party may actually convey a property interest *nunc pro tunc*, compare Mas-Hamilton Group v. LaGard, Inc., 156 F.3d 1206, 1210–11 (Fed. Cir. 1998) (finding a *nunc pro tunc* transfer of patent rights made prior to litigation sufficient to establish standing to assert patent rights in the transferee) with Argentum Med., LLC v. Noble Biomaterials, No. 3:08–CV–1305, 2010 WL 2650493, at *5 (July 1, 2010) (finding an attempt to convey intellectual property rights *nunc pro tunc* invalid and insufficient to establish standing to assert patent rights in the purported transferee).  Ultimately, whether the "*nunc pro tunc*" language could make the transfer of coverage effective on February 23, 2009, does not affect the outcome of this case, which is limited to the Defendants' interpretation of the basic policy provisions.

8

crop insurance coverage disputes not resolved by mediation, but reserves to FCIC interpretations

of the policy language and procedures. In relevant part Section 20 states:

> (a) . . . If resolution cannot be reached through mediation, or you and we do not
> agree to mediation, the disagreement must be resolved through arbitration in
> accordance with the rules of the American Arbitration Association . . . .
>> (1) All disputes involving determinations made by us . . . are subject to
>> mediation or arbitration. However, if the dispute in any way involves
>> a policy or procedure interpretation, regarding whether a specific
>> policy provision or procedure is applicable to the situation, how it is
>> applicable, or the meaning of any policy provision or procedure, either
>> you or we must obtain an interpretation from FCIC in accordance with
>> 7 CFR part 400, subpart X or such other procedures as established by
>> FCIC.
>>> (i) Any interpretation by FCIC will be binding in any mediation or
>>> arbitration.

RMA 34–35. Both NAU and Midland Farms submitted requests for interpretations to FCIC of

Section 28 of the basic provisions, which is the policy provision governing transfer and

assignment of rights which Midland Farms was seeking to have and which NAU had refused to

allow.

RMA and FCIC issued a final agency decision on January 5, 2012, on the questions

submitted by NAU and Midland Farms. RMA 134–42. That is the final agency decision at issue

here. For reasons the Defendants cannot explain, the Defendants did not make the final agency

decision of January 5, 2012 available at least to Midland Farms until late August of 2012. RMA

315–16. Midland Farms received a copy of the January final agency decision at a prehearing

conference on August 23, 2012, and formal receipt of the agency decision came to Midland

Farms on August 27, 2012. RMA 315–16, 317–20.

A final agency decision such as the January 5, 2012 letter is binding on all participants in

federal crop insurance programs under 7 C.F.R. § 400.765(c). Section 400.768 requires the

FCIC to publish "[a]ll agency final determinations . . . as specially numbered documents on the

9

RMA Internet website." 7 C.F.R. § 400.768(f). For reasons the Defendants cannot explain other than initial confusion, this final agency decision never has been published on the RMA website. Indeed, even as of today's date when any initial confusion has long passed, this final administrative decision is still not on the RMA website.[7]  See Risk Mgmt. Agency, Final Agency Determinations Archive: 2012, U.S. Dep't of Agric., http://www.rma.usda.gov/regs/533/2012.html (last visited July 17, 2015). The content and analysis of the final agency decision is contained in the next section.

Consistent with § 400.768(g), Midland Farms filed this action under the APA after exhausting its administrative remedies. Midland Farms initially joined NAU Country Insurance, Inc., as one of the Defendants in this case. Doc. 1. NAU filed a motion to dismiss, which this Court granted because the text of the APA does not permit suit against private defendants and thus is not an independent source of federal jurisdiction over NAU and over the claim against NAU. Doc. 30. Alternatively, even if an independent source of federal jurisdiction, such as diversity jurisdiction existed, the mandatory arbitration provision in the policy under which Midland Farms made its claim against NAU would require arbitration under the Federal Arbitration Act. Doc. 30; see 9 U.S.C. § 2.

After filing a first amended complaint dropping NAU as a defendant, Midland Farms filed the pending Plaintiff's Motion for Summary Judgment. Doc. 39. That motion frames the legal issue whether the Defendants' final agency decision dated January 5, 2012, was arbitrary, capricious, an abusive of discretion or otherwise not in accordance with the law. See 5 U.S.C. § 706(b); Thomas v. Jackson, 581 F.3d 658, 664 (8th Cir. 2009).

---

[7]The lack of publication of course does not render the decision arbitrary and capricious or an abuse of discretion. However, the absence of publication in the three-plus years since its issuance is, well, curious and noteworthy.

10

## III.   ANALYSIS OF THE FINAL AGENCY DECISION

The final agency decision dated January 5, 2012, is entitled to deferential review for the reasons explained above.  Applying that deferential review, this Court finds portions of the final administrative decision to be well within the realm of reasonable construction of regulations and not plainly erroneous.  However, some aspects of the final agency decision, even under the deferential review of agency interpretation of its regulation, are "arbitrary, capricious, an abusive of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

Some understanding of the Federal Crop Insurance Act and its purposes is necessary to put into context the final agency decision at issue.  Congress set the purpose of the FCIA to be "to promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance and providing the means for the research and experience helpful in devising and establishing such insurance."  7 U.S.C. § 1502(a).  The regulations at issue are designed to carry out that purpose.  Under § 400.168(b), an AIP, like NAU, "shall make available to all eligible producers in the areas designated in its plan of operations . . . crop insurance plans for the crops designated in its plan of operation."  7 C.F.R. § 400.168(b). Indeed, under the standard reinsurance agreement, an AIP "must offer and market all plans of insurance for all crops in any State where actuarial documents are available in which it writes an eligible crop insurance contract and must accept and approve applications from all eligible producers."   Fed. Crop Ins. Corp., 2005–2009 Standard Reinsurance Agreement § II.A.2 (emphasis added), available at http://www.rma.usda.gov/pubs/ra/05SRA_final.pdf.  Risk that a claim will be filed is not a permissible factor in weighing coverage and transfer applications, although it may affect premium.  See 7 C.F.R. § 400.168(b).

11

Consistent with provisions of the FCIA, NAU issued crop insurance policies to the Hardeses for the winter wheat crops at issue, as they were eligible persons with a bona fide interest in the crop at the time coverage began and had made an application. There is no question that NAU accepted the Hardeses as eligible persons, collected premiums for the 2008 winter wheat crops planted on Midland Farms' property by the Hardeses, and extended coverage on the winter wheat crops planted by the Hardeses in 2008 to be harvested in 2009. The question that gave rise to this dispute surrounds the effect of the transfer of coverage and right to indemnity signed by the Hardeses in favor of Midland Farms in July of 2009 *nunc pro tunc* to the date of the Hardeses' eviction from Midland Farms' land.

Section 28 of the common crop insurance policy governs that question. Section 28 reads:

### 28. Transfer of Coverage and Right to Indemnity

If you transfer any part of your share during the crop year, you may transfer your coverage rights, if the transferee is eligible for crop insurance. We will not be liable for any more than the liability determined in accordance with your policy that existed before the transfer occurred. The transfer of coverage rights must be on our form and will not be effective until approved by us in writing. Both you and the transferee are jointly and severally liable for the payment of the premium and administrative fees. The transferee has all rights and responsibilities under this policy consistent with the transferee's interests.

RMA 38. As concerns this case, the Hardeses had their interest in the winter wheat crops involuntarily transferred under the state court eviction order to Midland Farms and ultimately signed transfer of coverage rights forms. There is no issue here about any claim for liability in excess of the policy amount, about use of the proper forms, about payment or nonpayment of premium, or about Midland Farms' eligibility for crop insurance. The critical language of Section 28 on which this dispute turns is that "transfer of coverage rights . . . will not be effective until approved by us [meaning NAU as the AIP] in writing."

12

There is some guidance from the United States Court of Appeals for the Eighth Circuit concerning this particular language of Section 28. Although not central to its holding, the Eighth Circuit in Kroeplin Farms General Partnership v. Heartland Crop Insurance, Inc., 430 F.3d 906 (8th Cir. 2005) observed:

> [T]he standard policy at issue here provides that a transfer of coverage is not effective "until approved by us [the insurance company providing insurance] in writing." See 7 C.F.R. 457.8 (Section 28 of the Common Crop Insurance Policy). This right of approval permits insurance companies to determine the reality of the transfer requested and to prevent fraudulent schemes.

Id. at 912 (second bracketed text in original). Although a copy of the Kroeplin Farms decision is in the administrative record, RMA 484−91, Defendants[8] in the final agency decision did not refer to Kroeplin Farms, nor to any other case or other final agency decision or other authority. RMA 139−42. Instead, the Defendants' only legal citation in analyzing this language of Section 28 was a reference to Section $508(c)(10)$[9] of the FCIA. See RMA 140. Defendants now concede that this was a mistake and that Section $508(c)(10)$ has nothing to do with any issue covered by the final agency decision. Thus, the Defendants' interpretation of the key language of Section 28 draws from no prior authority and ignores the one federal court of appeals decision commenting on the very language at question.

The Defendants properly concluded that a transfer of coverage and right to indemnity is not automatic under Section 28, because textually Section 28 requires that the transfer "be on [the AIP's] form and will not be effective until approved by [the AIP] in writing." See RMA 38, 140. This is altogether consistent with Kroeplin Farms which recognized that "this right of

---

[8]Technically, RMA issued the final decision as the administrator and on behalf of FCIC. See 7 U.S.C. §§ 1506(r), 6933. This Court will refer to the final agency decision as being from the Defendants for ease of reference.

[9]Section 508(c)(10), which is codified at 7 U.S.C. § 1508(c)(10), refers to an administrative fee and is altogether inapposite to any issue in this case.

approval permits insurance companies to determine the reality of the transfer requested and to prevent fraud schemes." Kroeplin Farms, 430 F.3d at 912. Defendants appropriately noted that circumstances in a transfer of coverage differ from the initial issuance of coverage because a transferee may not be known to an AIP, has not filled out an application, and may constitute an excessive risk. RMA 140.

> However, the Defendants then made a leap from logic to declare:

> An AIP has the discretion to elect not to accept or approve a properly executed transfer or assignment for legitimate business reasons (e.g., because the crop insurance interest has previously been transferred or assigned, there is not a remaining interest to transfer or assign, etc.). The AIP is in no position to judge the validity or preference of such transfers or assignments, and, therefore, has the authority to reject them if the situation warrants it.

RMA 140. There are several reasons why such a declaration is arbitrary and capricious, an abuse of discretion or not in accordance with law.

First, there is no source in any statute or regulation or elsewhere for an AIP having such "discretion" to refuse a properly executed transfer or assignment "for legitimate business reasons." The text of Section 28 and indeed no text within the FCIA or common crop insurance policy supports such "discretion" to refuse a transfer for "legitimate business reasons." The phrase "legitimate business reasons" appears to have been conjured without any reference to the FCIA regulations, authority or other valid reasoning. The insertion by Defendants of an AIP's "discretion" to refuse to transfer for "legitimate business reasons" is inconsistent with the Kroeplin Farms construction of Section 28 and with the general aim of the FCIA.[10] See Kroeplin Farms, 430 F.3d at 912; cf. St. Luke's Methodist Hosp. v. Thompson, 315 F.3d 984, 988 (8th Cir. 2003) (finding an agency interpretation of hospital-based skilled nursing facility

---

[10]This position is even inconsistent with the position that RMA (and NAU) had taken in correspondence on the topic with Midland Farms. RMA 49–50, 82–83.

14

reimbursement regulations controlling payment for "atypical services" was based on irrelevant provisions and clearly wrong because it imported considerations from another part of the regulations that deal with other policy goals).

Second, the two illustrations given by the Defendants of "legitimate business reasons"— "because the crop insurance interest has previously been transferred or assigned [or] there is not a remaining interest to transfer or assign," RMA 140—apparently stem from the Defendants' misunderstanding some of the facts concerning the relationship between Midland Farms, the Hardeses, and NAU. The crop insurance interest of the Hardeses had not been previously transferred; rather, the Hardeses had executed assignments of indemnity under Section 29 to creditors. These are not transfers of coverage under Section 28, where the policy rights are being transferred, but rather are akin to security arrangements with creditors. These two assignments of indemnity under Section 29 predating the transfer of coverage may affect Midland Farms' payment rights, but do not constitute a previous transfer of coverage in conflict with the transfer of coverage to Midland Farms. The Defendants' second illustration—"there is not a remaining interest to transfer or assign"—embraces NAU's argument that the Hardeses had no ability to transfer policy rights after being evicted on February 23, 2009, even though the order of eviction required the Hardeses to transfer crop insurance policy rights to Midland Farms. Under NAU's argument, the Hardeses immediately lost all interest in the crops and entitlement to transfer crop insurance rights upon eviction. NAU then asserted that, despite the Hardeses and Midland Farms intending the transfer to be effective at the time of eviction by dating the transfer forms *nunc pro tunc* to February 23, 2009, Midland Farms could not receive any transfer of coverage rights because there was nothing to transfer. This despite the fact that Midland Farms owned the land on which the winter wheat was growing and had a state court judgment requiring the Hardeses to

15

transfer the policy rights as part of the eviction.  NAU under this assertion could retain premiums on the Hardeses' winter wheat crops it was insuring, without bearing any coverage responsibility after the February 23, 2009 eviction order.  The Defendants elsewhere in the January 5, 2012 final agency decision endorsed NAU's argument by stating that when "the insured no longer has a share at the time the transfer is executed, for example, the insured has been evicted from the property, there is nothing for the insured to transfer and the transfer would not be valid."  RMA 142.  The Defendants now have abandoned that position.[11]  In short, the two illustrations of "legitimate business reasons" derive from the Defendants' apparent acceptance of an NAU argument that Defendants now disavow and a misunderstanding about previous assignments of indemnity.

Third, it is arbitrary and capricious, an abuse of discretion and not in accordance with law to leave the determination of "legitimate business reasons" to the unfettered and unreviewable "discretion" of the AIP.  The Defendants' two illustrations of "legitimate business reasons" is followed by "etc." indicating that the AIP may invoke other unmentioned "legitimate business purposes."  Any AIP like NAU naturally has an array of legitimate business reasons and goals, including maximizing profits, holding down claims payment, not having to invest employee time in processing or evaluating transfer forms, among other things.  The Defendants' decision leaves

---

[11]The Defendants' decision to abandon this position makes sense because the basic provisions of FCIC-backed crop insurance policy do not support NAU's argument.  While it is true that, to be eligible for federally-backed crop insurance, a producer must own a "bona-fide insurable interest" in a crop, 7 U.S.C. § 1520, an insured's "share" is determined "at the time insurance attaches."  RMA 17.  Moreover, Section 3 of the basic provisions provides that a crop insurance policy will "remain in effect for each crop year following the acceptance of the original application until canceled . . . in accordance with the terms of the policy or terminated by operation of the terms of the policy, or by [the AIP]."  RMA 19 (Section 3(a) of the basic policy provisions).  No policy terms provide for automatic termination of the policy when an insured conveys his or her interest in the insured crop.  See RMA 19–21.

no means to question the AIP's "legitimate business reasons" for refusing a transfer.  Other parts

of the Defendants' final agency decision make this clear, like where the Defendants reason:

> Where the Transfer of Coverage form is not approved in writing by the AIP, but is
> rejected by the AIP, the attempted transfer is ineffective and the proposed
> transferee obtains no rights under the policy.
>  . . . Since the policy has not transferred, the potential transferee does not have any
> rights under the policy, such as the right to appeal. . . .  As such, FCIC agrees with
> [NAU's] interpretation that the proposed transferee [Midland Farms] would not
> be extended policy rights under section 20 to pursue any claims in arbitration for
> enforcement of any term of the policy.

RMA 139–40.  As applies to this fact situation, the Defendants' final agency decision would

mean that tenants like the Hardeses would have no policy rights once evicted and rejection of the

transfer would leave a transferee/landlord like Midland Farms no policy rights; thus, no party

would have any policy rights or could maintain an arbitration action which is the exclusive

remedy in a dispute over entitlement to crop insurance payments.  Under this interpretation, there

would be no remedy or avenue to challenge NAU's decision to not allow transfer of coverage

and presumably retain premiums without responsibility for any potential claim.  In short, the

Defendants' final agency decision means that there is no check, no arbitration, no appeal, and no

limit on the AIP's "discretion" to deny a Section 28 transfer for anything an AIP deems a

"legitimate business reason."  This result is altogether contrary with the Congressional purpose

of the FCIA, with the Section 20 procedures for allowing mediation and ultimately arbitration to

resolve factual dispute concerning crop insurance claims, and basic provisions controlling

termination of crop insurance policies.

Other aspects of the final agency decision are not arbitrary and capricious.  The final

agency decision appropriately concluded, based on Section 4F(4)(b) of the CIH that "a Transfer

of Coverage and Right to an Indemnity is subject to any outstanding Assignment of Indemnity

made prior to the date of the requested transfer."  RMA 140.  Also, it is not arbitrary or

17

capricious to conclude that "any attempt by a proposed transferee to back date a Transfer of Coverage and Right to Indemnity form would be ineffective to supersede outstanding Assignments of Indemnities made prior to the date of the receipt and approval of the Transfer of Coverage . . . form." RMA 140.

Further, the final agency decision is not arbitrary and capricious in determining that the effective date of a transfer may be different than the execution date, such that "[t]here are circumstances where the parties can execute a document on one date and the terms of the document can specify that they are effective on an earlier date if agreed to by both parties to the agreement." RMA 141. Further, it was not arbitrary or capricious for Defendants to decide that transfers of coverage may cover all or part of an insured's share of crop and need not occur at the same time that the share of crop is transferred. RMA 142. Further, the transfer of coverage and right to indemnity in fact can occur at any time of the year. RMA 142.

The Eighth Circuit in Kroeplin Farms provided guidance on when an AIP may refuse to transfer coverage. This decision provides further guidance to the Defendants. It of course is not for this Court to rewrite the final agency decision. With guidance from Kroeplin Farms and this decision, Defendants on remand may choose to issue a decision, one to be timely provided to the interested parties and posted on the RMA website, concerning the proper interpretation of Section 28 of the common crop insurance policy.

## IV. CONCLUSION

For the reasons contained above, it is hereby

ORDERED that Plaintiff's Motion for Summary Judgment is granted in part, as outlined in this Opinion and Order. It is further

18

ORDERED that the matter is remanded for Defendants' consideration and issuance of a

final agency decision, if Defendants so choose, that is not inconsistent with this Opinion and

Order.

DATED this **29ᵗʰ** day of July, 2015.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE

19